IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID LAMBERT, <u>et al.</u>,

      Plaintiffs,

v.                                        Civil Action No. 3:15CV61

DEMOCRATIC PARTY OF VIRGINIA,
<u>et al.</u>,

      Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (Docket No. 26) and DEFENDANTS' CONSENT MOTION TO SET HEARING ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (Docket No. 36). For the reasons set forth below, the motion to dismiss will be granted and the motion to set hearing will be denied.

## PROCEDURAL BACKGROUND

On January 30, 2015, David Lambert, Gary Hill Sr., and Linda Hill ("Plaintiffs") filed this action against the Democratic Party of Virginia (the "Democratic Party") and the 74th House District Democratic Nominating Committee (the "Nominating Committee") (collectively, "Defendants"). (Docket No. 1.) On March 20, 2015, the Defendants filed a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6),

(Docket No. 3), which this Court heard on May 7, 2015, (Docket Nos. 22, 24).

At the hearing, the Court ordered the Plaintiffs to file an Amended Complaint. (Docket No. 21.) The Plaintiffs did so on May 21, 2015. (Docket No. 23.) The Amended Complaint challenges the way in which the Defendants selected a nominee to represent the Democratic Party in a special election held to fill a vacancy in the Virginia House of Delegates' 74th District (the "74th District"). Am. Compl. ¶ 5. The Defendants then moved to dismiss the Amended Complaint. (Docket No. 26.)

**FACTUAL ALLEGATIONS**

On November 5, 2013, Joseph D. Morrissey was elected to be the delegate representing the 74th District in the Virginia House of Delegates. Am. Compl. ¶ 20. On December 18, 2014, Delegate Morrissey, having been convicted of misconduct involving a minor, submitted a resignation letter to the Clerk of the House of Delegates at the urging of the leaders and members of the House of Delegates. Id. ¶ 23. Morrissey then announced that he would seek election as an Independent candidate. On or about the same day that Morrissey announced his resignation, the Democratic Party, operating through the Nominating Committee, selected a method for nominating a Democratic candidate to run for the vacant seat. Id. ¶ 35. The method of nomination, along with the rules governing the

2

selection process, was contained in a "Call to Caucus" document made public on December 19, 2014.  Id. ¶ 36-38.

The Defendants settled on a process known as a "firehouse primary," in which voters who were already members in good standing of any of the local Democratic committees in the 74th District would convene to choose the party candidate.  Id. at ¶¶ 39-42.  The Call to Caucus also required committee members who wished to vote to sign a written declaration affirming that they were "registered to vote in the 74th House District," did not "intend to support any candidate who is opposed to a Democratic nominee in the 74th House District Special Election," and have not "participated in and will not participate in the nominating process of any other party for the 74th House District Special Election."[1]

The "firehouse primary" was held on December 22.  Compl. ¶ 63.  Kevin Sullivan was nominated as the Democratic candidate, but was defeated in the general election by Morrissey, who ran as an Independent candidate against Sullivan and the Republican nominee, Matt Walton.[2]

---

[1] The Plaintiffs have not disputed that the contents of the public Call to Caucus document relied upon by the Defendants reflect the actual requirements of participating in the firehouse primary.  See Defs.' Br. in Supp. of Mot. to Dismiss Pls.' Am. Compl. at 3 n.3.

[2] The Court takes judicial notice of the candidates' affiliations and the general election results.  See Va. Dept. of

Defendants now move the Court once again to dismiss the Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Docket No. 26.) The Defendants have also filed a consent motion to set a hearing on the motion to dismiss. (Docket No. 36.) Because the Plaintiffs have failed to demonstrate that they have standing, the Court will grant Defendants' motion to dismiss under Rule 12(b)(1). The Defendants' motion to set a hearing will be denied.

## DISCUSSION

### I.   Applicable Legal Standard

Article III of the Constitution requires that federal courts only adjudicate "cases" and "controversies." To qualify as a case or controversy, a matter must be "of the sort traditionally amenable to, and resolved by, the judicial process." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102 (1998). A plaintiff's "standing to sue" is a defining characteristic of cases and controversies that are amenable to judicial resolution. The standing requirement "tends to assure that the legal questions presented to the court will be resolved, not in the rarefied atmosphere of a debating society, but in a concrete factual context conducive to a

---

Elections 2015 Election Results, available at http://elections.virginia.gov/index.php/resultsreports/election-results/2015-election-results/01132015Results.html.

realistic appreciation of the consequences of judicial action." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 153-54 (4th Cir. 2000) (quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982)).

To satisfy the "irreducible constitutional minimum of standing," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), a plaintiff must have suffered an injury in fact that is both "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Gaston Copper, 204 F.3d at 154 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). This formulation contains three elements: (1) injury; (2) traceability, sometimes called causation; and (3) redressability. See id. "While each of the three prongs of standing should be analyzed distinctly, their proof often overlaps. Moreover, these requirements share a common purpose — namely, to ensure that the judiciary, and not another branch of government, is the appropriate forum in which to address a plaintiff's complaint." See Gaston Copper, 204 F.3d at 154 (citing Allen, 468 U.S. at 752).

To satisfy the injury-in-fact element, the Plaintiffs must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Defenders of Wildlife, 504 U.S.

5

at 560 (internal citations and quotation marks omitted). This requirement is designed to filter out claims of highly attenuated injuries. See id. Accordingly, "[f]ederal jurisdiction cannot lie if the alleged injury is merely 'an ingenious academic exercise in the conceivable.'" Gaston Copper, 204 F.3d at 156 (quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 688 (1973)).

## II.  Analysis

The gravamen of Plaintiffs' Amended Complaint is that Plaintiffs were not permitted to vote in the unassembled caucus because the rules governing the unassembled caucus were made public on December 19, 2014, but required voters to be members in good standing of one of the three local Democratic Party committees as of December 18, 2014. As such, Plaintiffs were not given the opportunity to participate in the nomination process employed by the Democratic Party for this particular special election.

As Defendants point out, however, the challenged qualification was not the only qualification that those participating in the nominating process needed to meet.

> [T]he rules governing the unassembled caucus
> also required all participants in the
> unassembled caucus to sign a written
> declaration affirming that they were not a

member of any political party other than the
Democratic Party; that they did not intend
to support any candidate who was opposed to
a   Democratic   nominee   in   the   special
election; and that they had not participated
in   and   would   not   participate   in   the
nominating process for any other political
party for the special election.

(Docket No. 26 at 11-12.)   Because the Plaintiffs have not

alleged in their Amended Complaint that they were willing and

able to sign the declaration, the Defendants contend that they

"have not carried the burden of showing that their purported

injury — the inability to vote — was due to the rules governing

the unassembled caucus and not Plaintiffs' inability to meet the

other requirements to vote."   Id. at 13.

The Defendants are correct.   In order to have been harmed

by the challenged qualification, the Plaintiffs must have been

otherwise qualified voters who knew of the nomination process at

the time, wanted to participate at the time, and did not attempt

to participate only because they knew doing so would be futile

based on the challenged qualification.   If Plaintiffs fail to

(or cannot) allege this factual posture, then "the alleged

injury   is   merely   'an   ingenious   academic   exercise   in   the

conceivable.'"   Gaston Copper, 204 F.3d at 156 (quoting SCRAP,

412 U.S. at 688).

In their briefing, Plaintiffs state that they "wanted to

participate," (Docket No. 34 at 12), and they allege that they

would be considered Democrats according to the Democratic Party

7

of Virginia's Party Plan, Am. Compl. ¶¶ 10-13, but that is not enough. As Defendants point out, there were other declarations that the Plaintiffs would have been required to make. "[B]y Plaintiffs' logic, former Democratic Delegate Morrissey would have met the requirements to vote at the time of the unassembled caucus even though he actually ran against and defeated the Democratic nominee in the special election." (Docket No. 35 at 4.)

Plaintiffs also protest that they "were never afforded an opportunity to get to the point where they would have to sign any such affirmation since they were denied the prerequisite right to vote." (Docket No. 34 at 12.) But this argument was already raised during the Court's hearing on the original Complaint. There, Plaintiffs made the following argument:

> If you preclude me from being eligible to be in the pool of voters, then what oath or affirmation should I be required to make? I can't vote anyway. You barred me from voting. I don't have to allege that I'm allowed to vote and I qualify under the requirements of the Democratic Party, that I'm going to vote democratic, I'm not going to support somebody else in another party, I'm going to be loyal to the party. If you told me already by the rules you've adopted that I can't vote, then asking me to submit to something that is irrelevant[.]

May 7, 2015 Hr'g Tr. 27:10-28:1 (Plaintiffs). But the Plaintiffs are not being asked to show that they actually submitted a written declaration at the time of the firehouse

8

primary or actually attempted to vote knowing that they would be turned away.   Instead, they are being required to allege that they <u>would</u> have been willing and able to sign the written declaration at the time of the firehouse primary and <u>would</u> have attempted to vote had the challenged qualification not been adopted.

For example, the Court asked in the hearing on the motion to dismiss the original Complaint whether a resident of Pennsylvania or Florida could bring this claim.   <u>Id.</u> at 28:2-19. The point of this question was not that the Plaintiffs needed to allege that they are from Virginia – they have and the Court has no reason to doubt that they are – but rather that they needed to allege that they otherwise satisfied all the other qualifications of voting in the firehouse primary save for the one rule precluding their involvement: that the Plaintiffs needed to be members of their local Democratic committees one day before the date the rules were put into effect.

Because the Plaintiffs have not alleged that they actually attempted to vote and were turned away, they must at least allege sufficient facts to show that they would have satisfied all other qualifications and that their failure to vote was attributable to the challenged qualification.   <u>Compare</u> <u>Moose</u> <u>Lodge No. 107 v. Irvis</u>, 407 U.S. 163, 166-67 (1972) (holding plaintiff did not have standing to challenge Lodge's membership

9

policy where he never sought to become a member) with Nyquist v. Mauclet, 432 U.S. 1, 6, n.7 (1977) (noting that a party did not need to apply for a loan that would have been refused in order to establish a concrete dispute where the party was otherwise qualified for, and entitled to, financial assistance but for the challenged rule). Without such allegations, the "injury" is merely conjectural or hypothetical rather than concrete and actual.

In short, the Amended Complaint merely engages in an academic exercise that posits no injury. Accordingly, the Plaintiffs have not pleaded an actual case or controversy, something that they must do before this Court's authority can be constitutionally invoked.

## CONCLUSION

For the foregoing reasons, DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (Docket No. 26) will be granted. Having been twice afforded the opportunity to satisfy the case or controversy requirement for federal jurisdiction and having twice failed to do so, the Plaintiffs will not be afforded another opportunity to bring their claim in federal court. Thus, the action will be dismissed with prejudice to any further proceeding in the federal courts. The action will be dismissed without prejudice to any claim that the Plaintiffs may have in the courts of Virginia. Because the facts and legal contentions

10

are adequately presented in the materials before the Court and oral argument would not aid the decisional process, DEFENDANTS' CONSENT MOTION TO SET HEARING ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (Docket No. 36) will be denied.

It is so ORDERED.

_____ /s/      _REP___

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August _11_, 2015